1   Shawn A. McMillan, Esq. – SBN: 208529
    attyshawn@netscape.net
2   Stephen D. Daner, Esq. – SBN: 259689
    steve.mcmillanlaw@gmail.com
3   Adrian M. Paris, Esq. – SBN: 301355
    adrian.mcmillanlaw@gmail.com
4   THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
    4955 Via Lapiz
5   San Diego, California 92122
    Telephone: (858) 646-0069
6   Facsimile: (858) 746-5283

7   Civil Counsel and WIC §317(e) Counsel for
    Y.I., A.G., and D.G.

8

9

10  **UNITED STATES DISTRICT COURT**

    **SOUTHERN DISTRICT OF CALIFORNIA**

11

12  Y.I., a minor, by and through her          Case No.:  **'20 CV0588 LAB LL**
    Guardian ad litem; A.G., a minor, by
13  and through her Guardian ad litem;         **COMPLAINT FOR DAMAGES**
    D.G., a minor, by and through her
14  Guardian ad litem,                         Claim 1:   42 U.S.C. §1983
                                               Claim 2:   *Monell* Claim
15              Plaintiffs,                     Claim 3:   Breach of Mandatory
                                                          Duties
16       vs.                                    Claim 4:   Negligence (County
                                                          Defendants)
17  COUNTY OF SAN DIEGO, a public              Claim 5:   Negligence (Mayra
    entity; SHARON MCMUNN, an                             Gonzalez)
18  individual, BOB PROKESCH, an               Claim 6:   Battery (Mayra Gonzalez)
    individual; MICHELE WINTER, an
19  individual; MAYRA GONZALEZ, an
    individual; DOES 1 through 30,
20  inclusive,

21              Defendants.

22

23                                             **JURY TRIAL DEMANDED**

24  / / /

25

26

27  / / /

28

────────────────────────────────────

**Jurisdiction and Venue**

1. This action is brought pursuant to 42 U.S.C. §1983 to seek redress for Defendants' actions taken under color of law. Defendants' conduct deprived Plaintiffs of their fundamental constitutional rights secured to them under the United States Constitution, including the First, Fourth, and Fourteenth Amendments, and under federal and state law. Plaintiff also brings state law claims.

2. Jurisdiction is conferred by 28 U.S.C. §§1343(a)(3) and 1343(a)(4), which provides for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. §1983. Jurisdiction is also conferred by 28 U.S.C. §1331 because the claims for relief derive from the United States Constitution and the laws of the United States. This Court has supplemental jurisdiction over Plaintiffs' state law claims, pursuant to 28 U.S.C. §1367.

3. The acts and omissions complained of herein occurred in the County of San Diego, and it is believed that all living Defendants currently reside in the County of San Diego. Venue is proper in the District Court for the Southern District of California.

4. Plaintiff makes the following allegations and claims upon personal belief, investigation of his counsel, and on information and belief.

**The Parties**

5. At all times relevant to this Complaint, Minor Plaintiff Y.I. was a resident of San Diego County, California. Y.I. remains a minor.

6. At all times relevant to this Complaint, Minor Plaintiff A.G., was a resident of San Diego County, California. A.G. remains a minor.

7. At all times relevant to this Complaint, Minor Plaintiff D.G., was a resident of San Diego County, California. D.G. remains a minor.

8. Defendant County of San Diego ("County") is a public entity of which the San Diego County Health and Human Services Agency ("HHSA") is a subdivision.

9. At all times relevant to this Complaint, HHSA Social Worker Sharon McMunn

("Ms. McMunn" or "McMunn") was an individual residing in the County of San Diego, and an officer, agent, and/or employee of the County of San Diego and HHSA.

10.   At all times relevant to this Complaint, HHSA Supervising Social Worker Bob Prokesch ("Mr. Prokesch" or "Prokesch") was an individual residing in the County of San Diego, and an officer, agent, and/or employee of the County of San Diego and HHSA.

11.   At all times relevant to this Complaint, HHSA Supervising Social Worker Michele Winter ("Ms. Winter" or "Winter") was an individual residing in the County of San Diego, and an officer, agent, and/or employee of the County of San Diego and HHSA.

12.   Hereinafter, when referred to collectively, the Defendants in paragraphs 9 through 11, inclusive, may occasionally be referred to as the SOCIAL WORKER DEFENDANTS.

13.   Mayra Gonzalez (aka Mayra Ibarra; Mayra Troncoso) was an individual residing in the County of San Diego, and Y.I., D.G., and A.G.'s mother.

14.   Plaintiffs are ignorant of the true names and capacities of those County of San Diego Defendants sued herein as Defendant DOES 1 through 30, and for that reason has sued such Defendants under such fictitious names. Plaintiff will seek leave of Court to amend this Complaint to identify the DOE Defendants when their identities have been ascertained. Each of the fictitiously named DOE Defendants was in some manner liable and legally responsible for the harms sustained by Plaintiff in that their conduct caused the damages and injuries set forth herein.

15.   Whenever this Complaint makes reference to any act of Defendants, such allegations shall be deemed to mean all named Defendants, or their officers, agents, managers, representatives, employees, heirs, assignees, customers, tenants, who did or authorized such acts while actively engaged in the operation,

1   management, direction or control of the affairs of Defendants (or any of them) and

2   while acting within the course and scope of their duties, except as specifically

3   alleged to the contrary.

4   16.   At all times relevant to this Complaint, Defendants were the knowing employees,

5   agents, and/or alter egos of one another. Defendants directed, ratified, and/or

6   approved each other's conduct and that of each other's agents or employees.

7   Defendants agreed upon, approved or ratified each other's conduct, or otherwise

8   conspired together to commit all of the acts and/or omissions alleged herein.

9   ### COMMON ALLEGATIONS[1]

10   – ***Ms. Gonzalez Has a Documented History of Alcohol Abuse Since at Least 2009***

11   17.   In November 2009, Ms. Gonzalez drunkenly tried to sneak her fourteen (14) year

12   old daughter out of a residence. When caught, Ms. Gonzalez ran towards her car to

13   flee the scene. But, Ms. Gonzalez's family and/or friends used their cars to block

14   Ms. Gonzalez's car, and prevent her from driving under the influence.

15   18.   A San Diego County Sheriff Deputy responded to the scene. Ms. Gonzalez

16   admitted to having several drinks prior to arriving at the residence. Ms. Gonzalez

17   is arrested and charged for being drunk in public.

18   – ***In March 2015, Ms. Gonzalez Drives Drunk – With Her Children in The Car –***

19   ***and Crashes***

20   19.   On March 25, 2015, Ms. Gonzalez got extremely drunk, got behind the wheel of

21   her car, and drove. Ms. Gonzalez was not alone. Y.I. and another child were also

22   in the car.

23   20.   At around 10:00 a.m., while Ms. Gonzalez was driving drunk, she lost

---

[1] At present Plaintiffs and their counsel do not have full access to all juvenile records. While Plaintiffs have received portions of Y.I., D.G., and A.G.'s confidential juvenile court records, certain documents have not been provided – including all law enforcement records. At this time, the full substance and extent of information contained therein is unknown. As such, the full extent of the wrongdoing of the defendants is, as of yet, unknown and nor readily ascertainable by Plaintiffs. Hence, Plaintiffs reserve their right to amend the complaint once full access to all relevant information is granted.

consciousness, veered into another lane, and crashed her car. The crash was severe enough to deploy the vehicle's air bags.

21.   Paramedics arrived, but Ms. Gonzalez refused medical attention at the scene. Instead, she drove away from the scene.

22.   Later, on Ms. Gonzalez drove herself to the Vista Medical Clinic. The Vista Medical Clinic referred Ms. Gonzalez to the Tri-City Medical Center.

23.   Ms. Gonzalez entered the Tri-City Medical Center extremely intoxicated, and reeking of alcohol. At around 2:15 pm, Ms. Gonzalez's Blood Alcohol Concentration ("BAC") was .259% – over three times the legal limit.[2] At 4:26 p.m., Ms. Gonzalez remained clinically intoxicated.

–   *HHSA Investigates Ms. Gonzalez's DUI*

24.   On March 25, 2015, the County received a Child Abuse Referral alleging that Ms. Gonzalez crashed her car while extremely drunk, that Ms. Gonzalez was still drunk over 6 hours after the accident, and that two minors were in the car at the time of the accident. HHSA designated the referral for "immediate" investigation.

25.   On March 26, 2015, Ms. McMunn was assigned to investigate Ms. Gonzalez for emotional abuse, general neglect, and severe neglect.

26.   On March 26, 2015, Ms. McMunn spoke with Tri-City Medical Center's staff. They explained that (1) Ms. Gonzalez lost consciousness at the scene, (2) the air bags deployed, (3) she refused treatment from the paramedics, (4) Ms. Gonzalez drove herself to the hospital, (5) Ms. Gonzalez kept getting lost to and from the bathroom, and (6) Ms. Gonzalez was released only after she sobered up.

27.   That same day, Ms. McMunn spoke with Ms. Gonzalez. During this conversation, Ms. Gonzalez lied, and claimed that: (1) she did not blackout at the accident scene, (2) the air bags did not deploy, (3) no paramedics were at the scene – just Vista Sheriff's Department, (4) Ms. Gonzalez's parents drove her to the hospital, and (5)

---

[2] It is illegal for any person to operate a vehicle with a BAC of 0.08% or higher, if the person is 21 years old or older. (Cal. Veh. Code, §23152(a)-(b).)

1    the hospital did a blood draw, and didn't even know that she had been drinking.

2    Ms. McMunn documented these misrepresentations in the CWS/CMS database

3    and/or juvenile case file.

4    –    ***HHSA Substantiates the Allegation of Severe Neglect Against Ms. Gonzalez***

5    28.    After investigation, Ms. McMunn spoke with Mr. Prokesch and DOES 1-20

6    regarding her investigation and the allegation of "severe neglect"[3] against Ms.

7    Gonzalez. Ms. McMunn, Mr. Prokesch, and DOES 1-20 "substantiated"[4] the

8    allegation of "severe neglect" against Ms. Gonzalez.

9    29.    Because, the allegation of severe neglect was substantiated, Ms. McMunn, Mr.

10    Prokesch, and DOES 1-20 were required to – and did – submit a written report to

11    the California Department of Justice ("DOJ"). In turn, the DOJ placed and/or

12    listed Ms. Gonzalez on the Child Abuse Central Index ("CACI").

13    30.    Despite the "substantiated" child abuse allegation, and the egregious nature of the

14    offense, Ms. McMunn, Mr. Prokesch, and DOES 1-20 decided not to seek court

15    intervention and/or implement a safety plan to protect Y.I.

16    31.    Ms. McMunn, Mr. Prokesch, and DOES 1-20 discussed the safety issues and

17    services that were necessary to ensure that Y.I. remained safe and protected under

18    Ms. Gonzalez's care. Ms. McMunn, Mr. Prokesch, and DOES 1-20, determined

19    that services and/or safeguards were necessary to address Ms. Gonzalez's

20    behaviors and conduct. Thus, California Department of Social Services (CDSS)

21    Regixlations Division 31, required Ms. McMunn, Mr. Prokesch, and DOES 1-20 to

22

---

23    [3] "Severe neglect" means those situations of neglect where a parent willfully
24    causes or permits the person or health of the child to be placed in a situation such that his
     or her person or health is endangered, as proscribed by Section 11165.3. (Cal. Penal
25    Code, §11165.2.)

26        [4] "Substantiated report" means a report that is determined to constitute child abuse
     or neglect, as defined in Section 11165.6, based upon evidence that makes it more likely
27    than not that child abuse or neglect, as defined, occurred. A substantiated report shall not
     include a report where the investigator who conducted the investigation found the report
28    to be false, inherently improbable, to involve an accidental injury, or to not constitute
     child abuse or neglect. (Cal. Penal Code, §11165.12.)

---

COMPLAINT FOR DAMAGES

5

create a case plan and provide the necessary services to Ms. Gonzalez and her children. Ms. McMunn, Mr. Prokesch, and DOES 1-20 failed to create a case plan and/or provide the necessary identified services to Ms. Gonzalez and her children.

32. Instead, Ms. McMunn, Mr. Prokesch, and DOES 1-20 generally mentioned and/or suggested that Ms. Gonzalez should avoid drinking and driving with children in her car.

33. Ms. McMunn, Mr. Prokesch, and DOES 1-20 did not set up a safety plan, or otherwise require Ms. Gonzalez to participate in any alcohol/substance abuse treatment programs and/or classes. She was not required to participate in any form of parenting classes either.

34. After March 27, 2015, Ms. McMunn, Mr. Prokesch, and DOES 1-20 failed to follow up or otherwise contact Ms. Gonzalez, did not check on Y.I., and/or did not further monitor Ms. Gonzalez and her at risk children in any way. Ms. McMunn, Mr. Prokesch, and DOES 1-20 did not follow up to ensure that Ms. Gonzalez was staying sober, not abusing alcohol, not driving drunk, and/or engaging in activities and/or conduct that posed a threat to Y.I.

– ***In May 2016, Ms. Gonzalez Again Drives Drunk With Y.I. in the Car – and Again Crashes***

35. In May 2016, Ms. Gonzalez was pregnant with D.G. On or about May 13, 2016, Ms. Gonzalez got drunk, got behind the wheel of her car, and drove – with Y.I in the car.

36. While drunk, Ms. Gonzalez was speeding and driving erratically on the freeway, weaving erratically across all lanes then sideswiped a concrete K-rail divider – causing sparks to fly. Other vehicles hung back to avoid getting struck.

37. Ms. Gonzalez exited the freeway, and crashed into a vehicle that was stopped at a red-light. She immediately fled the scene. But, did not get far. Her vehicle eventually stalled in the roadway.

38. Law enforcement responded to the accident. The responding officer located Ms.

Gonzalez's stalled vehicle, and smelled a strong odor of alcohol. Ms. Gonzalez's speech was slurred, and she was so drunk that she could barely stand.

39. Ms. Gonzalez was also driving without a valid driver's license.

40. Ms. Gonzalez's Blood Alcohol Concentration ("BAC") was .23% – almost three times the legal limit...AGAIN!

41. Law enforcement arrested Ms. Gonzalez for Driving Under the Influence. Prior to Ms. Gonzalez's arrest, the Officer allowed Antonia Troncoso, Ms. Gonzalez's mother, to pick up Y.I.

– *The District Attorney Charges Ms. Gonzalez With Willful Child Endangerment and Driving Under the Influence*

42. Ms. Gonzalez was criminally charged with (1) willful child endangerment, (2) Driving Under the Influence – with a child in the car, (3) "hit-run" driving, (4) no evidence of financial responsibility, and (5) driving without a license. (Exhibit A.)

43. Ms. Gonzalez posted bail, but the criminal judge ordered Ms. Gonzalez to not drive with any alcohol in blood, to submit to any alcohol/drug test, to attend two (2) Alcoholic Anonymous (A.A.) meetings per week, and to not have any negative contact with Y.I.

– *HHSA Investigates Ms. Gonzalez's Second DUI*

44. On May 25, 2016, the County received an Emergency Response and/or Child Abuse Referral alleging that Ms. Gonzalez had been arrested for driving under the influence with Y.I. in the car. The Reporting Party warned that Ms. Gonzalez was a liar, and could not be trusted.

45. Ms. McMunn was again assigned to investigate the child abuse allegations against Ms. Gonzalez.

46. On June 1, 2016, Ms. McMunn spoke with Ms. Gonzalez about her DUI. During this conversation, Ms. Gonzalez fabricated a story that her truck broke down, and a cop stopped to check on her. The officer observed two empty beer bottles in the backseat, and, based on that, arrested her for drunk driving. Ms. McMunn

accepted Ms. Gonzalez's story – without verifying the information with law enforcement or reading the police report.

47. Between June 2, 2016 through July 7, 2016, Ms. McMunn had no contact with Ms. Gonzalez.

48. Ms. McMunn did not request a copy of the police report until June 28, 2016 – thirty-three (33) days after beginning the investigation.

49. On July 6, 2016, Ms. McMunn finally obtained, and read, the police report. Ms. McMunn discovered that Ms. Gonzalez had again lied about the details surrounding her DUI.

50. On July 7, 2016, Ms. McMunn confronted Ms. Gonzalez about her lies and fabricated story. Ms. Gonzalez admitted to lying, and confessed to the accident.

– ***Ms. Gozalez is Ordered to Wear an Alcohol Ankle Monitor***

51. On July 12, 2016, the District Attorney moved for Ms. Gonzalez to wear an alcohol ankle monitor until D.G.'s birth. The criminal Court granted this request. And, Ms, Gonzalez began wearing an alcohol ankle monitor.

– ***Ms. McMunn is Warned That Ms. Gonzalez is a Compulsive Liar***

52. On July 18, 2016, Ms. McMunn spoke with Magali Ibarra, Ms, Gonzalez's sister. Magali warned and confirmed that Ms. Gonzalez was a compulsive liar, and cannot be trusted or believed. Ms. McMunn knew this, through her own interactions with Ms. Gonzalez.

– ***HHSA Again Substantiates the Allegation of Severe Neglect Against Ms. Gonzalez***

53. After investigation, Ms. McMunn spoke with Ms. Winter and DOES 1-20 regarding the allegation of "severe neglect" against Ms. Gonzalez. Ms. McMunn, Ms. Winter, and DOES 1-20 "substantiated" the allegation of "severe neglect" against Ms. Gonzalez.

54. Because, the allegation of severe neglect was substantiated against Ms. Gonzalez, Ms. McMunn, Ms. Winter, and DOES 1-20 were again required to – and did –

1   submit a written report to the California DOJ. In turn, the DOJ again placed and/or

2   listed Ms. Gonzalez on CACI.

55.   Ms. McMunn, Ms. Winter, and DOES 1-20 discussed the safety issues and

services that were necessary to ensure that Y.I. remained safe and protected under

Ms. Gonzalez's care. Ms. McMunn, Ms. Winter, and DOES 1-20, determined that

services and/or safeguards were necessary to address Ms. Gonzalez's behaviors

and conduct. Thus, California Department of Social Services (CDSS) Regulations

Division 31, required Ms. McMunn, Mr. Prokesch, and DOES 1-20 to create a

case plan and provide the necessary services to Ms. Gonzalez and her children.

Ms. McMunn, Ms. Winter, and DOES 1-20 failed to create a case plan and/or

provide the necessary identified services to Ms. Gonzalez and her children.

56.   Ms. McMunn, Ms. Winter, and DOES 1-20 also conducted a Risk Assessment.

The Risk Assessment is used to identify probabilities of future child abuse or

neglect. As a result, the Risk Assessment guides the key decisions, as to whether a

referral should be opened for services or closed (with or without community

services). Ms. McMunn, Ms. Winter, and DOES 1-20 determined that Y.I.'s risk

of sustaining – and/or Ms. Gonzalez's risk of causing – future abuse was "high."

57.   Ms. McMunn, Ms. Winter, and DOES 1-20's concerns regarding Ms. Gonzalez's

alcohol consumption were significant, and they asked the hospital to flag D.G. at

birth.

58.   Despite the substantiated child abuse allegation and the "high" risk of future

abuse, Ms. McMunn, Ms. Winter, and DOES 1-20 decided not to seek court

intervention and/or implement a formal safety and/or case plan to protect Y.I.

59.   Ms. McMunn, Ms. Winter, and DOES 1-20 did not set up a safety and/or case

plan, or require Ms. Gonzalez to participate in any alcohol treatment programs

and/or classes.

60.   Ms. McMunn, Ms. Winter, and DOES 1-20 asked Ms. Gonzalez whether she

would accept voluntary services with the HHSA and/or a safety mapping meeting.

Ms. Gonzalez declined.

61. After August 5, 2016, Ms. McMunn, Ms. Winter, and DOES 1-20 knew that Ms. Gonzalez's criminal trial was open and ongoing. Despite this, Ms. McMunn, Ms. Winter, and DOES 1-20 did not contact Ms. Gonzalez, refrained from following up or otherwise checking on Y.I., and/or did not monitor Ms. Gonzalez. Ms. McMunn, Ms. Winter, and DOES 1-20 did not contact the district attorney to ascertain the case's status or to discuss any newly acquired evidence. Further, Ms. McMunn, Ms. Winter, and DOES 1-20 did not follow up to ensure that Ms. Gonzalez was staying sober, not driving drunk, was not on probation, and/or following any criminal court orders.

62. Ms. McMunn, Ms. Winter, and DOES 1-20 did not follow up regarding the disposition of Ms. Gonzalez's criminal case.

– ***Ms. Gonzalez Pleads Guilty to Wilful Child Endangerment, and is Placed on Probation***

63. On August 17, 2017, Ms. Gonzalez admitted that she placed Y.I. in a "situation where her health and safety was endangered," and drove a motor vehicle while intoxicated with a B.A.C. over .15. (Exhibit B.)

64. Ms. Gonzalez plead guilty to (1) willful child endangerment and (2) driving under the influence – with an enhancement for excessive B.A.C. (Exhibit B.)

65. As part of her sentencing, Ms. Gonzalez was sentenced to five (5) years probation and ordered not to drive without a valid license or insurance.

66. Ms. McMunn, Ms. Winter, and DOES 1-20 did not contact Ms. Gonzalez, the District Attorney, or the Court regarding the disposition of Ms. Gonzalez's criminal case. Ms. McMunn, Ms. Winter, and DOES 1-20 did not check on and/or ensure that the Criminal Court's sentencing was sufficient to protect Y.I. or any other children. Further, Ms. McMunn, Ms. Winter, and DOES 1-20 did not check on and/or ensure that Ms. Gonzalez was conforming to the Court's sentencing. She was not.

67.  Ms. Gonzalez was a habitual drinker. Indeed, Ms. Gonzalez drank so much, that Y.I. – an 8 year old – was able to readily discern when she was drunk, because Ms. Gonzalez's voice would change. Ms, Gonzalez's drinking went unchecked.

– *In November 2018, Ms. Gonzalez Drives While Extremely Drunk With the Minor Plaintiffs in the Car*

68.  On November 11, 2018, Ms. Gonzalez, Y.I., A.G., and D.G. went to a birthday party at Chuck E. Cheese near San Marcos. Ms. Gonzalez drank alcohol while at Chuck E. Cheese. Ms. Gonzalez was also texting her friends, inviting them to grab some drinks.

69.  Afterward, Ms. Gonzalez loaded Y.I., A.G., and D.G. into her car, and drove to the beach near Oceanside. Ms. Gonzalez also brought beer, wine coolers, and marijuana to the beach. Ms. Gonzalez continued to consume alcohol at the beach.

70.  Ms. Gonzalez, Y.I., A.G., and D.G. left the beach, and drove to Lemon Grove, for a friend's house party. Ms. Gonzalez continued to drink alcohol at the house party. Ms Gonzalez remembered drinking eleven (11) alcoholic drinks at the house party.

71.  Y.I. – an eight year old child – knew that Ms. Gonzalez was extremely drunk. On this occasion, Y.I. knew that Ms. Gonzalez was drunk while at the house party.

72.  Ms. Gonzalez loaded Y.I., A.G., and D.G. into her car, and while extremely drunk, Ms. Gonzalez got behind the wheel of her car, and drove.

73.  Ms. Gonzalez was so intoxicated she had to stop every few minutes, because she was close to throwing up.

74.  During her drive around San Diego County, Ms. Gonzalez crashed into a parked vehicle, which slammed into another vehicle – Ms. Gonzalez kept driving. Ms. Gonzalez crashed into a sign post – she kept driving. Ms. Gonzalez crashed the back of her vehicle into a wall and got stuck – Ms. Gonzalez got un-stuck and kept driving.

75.  While this was happening, A.G. was crying inconsolably, and her face turned purple. Y.I. was afraid A.G. could not breathe. Y.I. climbed into the backseat, took

A.G. out of the car seat (which was not affixed to the vehicle to begin with) and held A.G. to calm her down. Ms. Gonzalez drunkenly told Y.I. to get back into the front seat. Y.I. said "No," she was holding the baby. Ms. Gonzalez again told Y.I. to come to the front, and expressed no cares for A.G. Y.I. continued to hold A.G. as Ms. Gonzalez continued to drive.

76. Multiple witnesses observed Ms. Gonzalez weaving between lanes, crossing over multiple lanes, and driving on the wrong side of the road. These witnesses called 911 to report Ms. Gonzalez as a suspected intoxicated driver, and described the vehicle as being in a recent collision. They were right – there had been many!

77. One witness drove alongside Ms. Gonzalez, and tried to get her to pull over. This witness reported to 911 that there were three children in the car – one of them holding a baby.

78. Ms. Gonzalez continued to run red lights, drive in the wrong direction, and accelerate her speed. There was no stopping her.

– ***Ms. Gonzalez Collides Head on With Another Vehicle***

79. On November 12, 2018, at approximately 4:30 a.m., Ms. Gonzalez – still driving the wrong way into oncoming traffic – slammed headfirst into a large 2011 Jeep Liberty.

80. Upon impact, A.G. flew out of Y.I.'s arms, and struck the car's windshield. A.G. was transported to Rady Children's Hospital. A.G. was placed in critical condition with life threatening injuries. A.G. suffered traumatic brain injuries and had multiple seizures for weeks as a result. A.G. suffered multiple skull fractures, pneumocephalus, two orbital fractures, and a deviated nasal septum. Physicians had to insert an external ventricular drain (EVD) to drain her brain fluid in order to decrease the brain pressure and swelling. A.G. still requires a G-tube (feeding directly to the stomach) to be fed.

81. Y.I. suffered a left ankle fracture, left flank hematoma, a contusion to her forehead, knee abrasions, and pain to her left hip. Y.I.'s leg was placed in a cast

1    and transported by wheel chair.

2    82.    D.G. suffered facial swelling, a contusion to her right eye, and abrasions to her
3           face.

4    83.    Perry Anisman, the other driver, suffered broken bones (clavicle and foot),
5           lacerations to his body, and was out of work for almost six months as a result.

6    84.    Ms. Gonzalez suffered a broken hip and femur.

7    85.    After the accident, Ms. Gonzalez tried to get Y.I. to lie about Ms. Gonzalez's
8           drunkenness that night. Being asked to lie about drinking was a common
9           occurrence. Y.I. refused to lie for her mother this time.

10   –      ***Ms. Gonzalez B.A.C. is .294***

11   86.    The San Diego Police Department obtained a warrant to conduct a blood draw,
12          and measure her B.A.C. Ms. Gonzalez's B.A.C. was .294. Again, more than triple
13          the legal limit.

14   –      ***The District Attorney Charges Ms. Gonzalez With Felony Child Abuse and***
15          ***Driving Under the Influence***

16   87.    On November 19, 2018, Ms. Gonzalez was criminally charged with (1) three (3)
17          counts of felony child abuse, (2) Driving Under the Influence – causing injury and
18          prior DUI, (3) driving without a license – prior DUI. (Exhibit C.)

19   –      ***Ms. Gonzalez Pleads Guilty to Felony Child Abuse and Driving While Heavily***
20          ***Intoxicated***

21   88.    In August 2019, Ms. Gonzalez admitted that she (1) willfully and unlawfully
22          endangered and inflicted great bodily injury on Y.I., D.G., and A.G., (2) drove
23          while intoxicated – with a B.A.C. above .15; (3) unlawfully drove while her
24          license was suspended for a prior DUI. (Exhibit D.)

25   89.    Ms. Gonzalez plead guilty to (1) three (3) counts of felony child abuse, (2) driving
26          under the influence – with an enhancement for excessive B.A.C., prior DUI, and
27          causing injury, and (3) driving without a license – prior DUI. (Exhibit D.)

28   90.    Ms. Gonzalez was sentenced to fourteen (14) years in prison.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF FEDERAL CIVIL RIGHTS

(Pursuant to United States Code, Title 42, § 1983)

(By all Plaintiffs Against Defendants Ms. McMunn, Mr. Prokesch, Ms. Winter, and DOES 1 through 30)

91. Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth at length herein.

92. The Fourteenth Amendment imposes a duty on the government to protect individuals from harm by third parties where it exposes a plaintiff to danger by acting with deliberate indifference to a known or obvious danger. *Henry A. v. Willden*, 678 F.3d 991, 998 and 1002 (9th Cir. 2012). When a government official creates or exposes an individual to a risk of harm – and the individual is injured as a result – constitutional rights are violated. *Id.* at 1002-1003.

93. County, McMunn, Prokesch, Winter, and DOES 1 through 30, inclusive, were charged with the affirmative obligation, that is, the duty to investigate allegations of child abuse and neglect, to provide the parent and/or child with appropriate services and/or safeguards to mitigate, prevent, and/or address any identified and/or substantiated abuse allegations, and to ensure any identified children are safe and/or protected from any substantiated abuse allegations and/or future harm.

94. County, McMunn, Prokesch, Winter, and DOES 1 through 30, inclusive, at all relevant times, had direct access to Ms. Gonzalez's criminal records, agency records, and/or the CWS/CMS database. These documents and records contained information concerning and/or evidencing Ms. Gonzalez's various behaviors, her alcohol abuse, and showed that Ms. Gonzalez's alcohol abuse was not confined to her private moments alone. Ms. Gonzalez demonstrated a pattern of driving while heavily intoxicated – with her children in the car.

95. Once County, McMunn, Prokesch, Winter, and DOES 1 through 30, chose to investigate – and substantiate – child abuse allegations, and inform themselves of

1    the foreseeable danger to Ms. Gonzalez's children, a special relationship arose

2    requiring Defendants to protect Plaintiffs.

3  96.  County, McMunn, Prokesch, Winter, and DOES 1 through 30, inclusive, at all

4    relevant times, knew that Ms. Gonzalez abused alcohol, had a history of driving

5    while extremely intoxicated – with children in the car, and/or willfully caused or

6    permitted her children to be placed in a situation such that their health was

7    endangered. Defendants further concluded that Ms. Gonzalez posed a "high" risk

8    to abusing or neglecting her children in the future. Defendants also knew that Ms.

9    Gonzalez was unable and/or unwilling to make the lifestyle changes necessary to

10   ensure minor Plaintiffs were safe and protected. County, McMunn, Prokesch,

11   Winter, and DOES 1 through 30, inclusive, identified Ms. Gonzalez as a current

12   and future danger to her children.

13 97.  Despite this, County, McMunn, Prokesch, Winter, and DOES 1 through 30,

14   inclusive, refused to seek court intervention, refused set up necessary safeguards,

15   refused to implement a mandatory safety plan, refused to set up a case plan, and/or

16   refused to intervene and protect the minor Plaintiffs.

17 98.  County, McMunn, Prokesch, Winter, and DOES 1 through 30, ignored the

18   potential risk to Y.I., D.G., and A.G., and exposed Plaintiffs to a serious threat and

19   danger that they would not have faced otherwise.

20 99.  As a direct and proximate result of Defendants' conduct, Plaintiffs' rights arising

21   under the Fourteenth Amendment were violated; and, Plaintiffs suffered damages

22   thereby, as according to proof at trial.

23 100. The McMunn, Prokesch, Winter, and DOES 1 through 30's conduct as herein

24   alleged was intentional and/or with a conscious disregard for Plaintiffs' rights. As

25   a result of this misconduct, Plaintiffs are entitled to recover punitive damages

26   against the individual defendants.

27 / / /

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SECOND CLAIM FOR RELIEF

### (*Monell* Related Claims 42 U.S.C. § 1983.)

(By all Plaintiffs Against The County of San Diego)

101.  Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth at length herein.

102.  The County and HHSA had a duty to implement and follow policies, customs, and/or practices which confirm and provide the protections guaranteed under the United States Constitution and under federal law. The County had a duty to use reasonable care to train, supervise, and/or control its agents, so as to protect these constitutional and statutory rights.

103.  Based on the duties charged to its social workers, including the duty to protect children from harm, the County knew or should have known of the need to establish policies and/or customs required to protect the civil rights of children with whom their agents regularly came into contact – and identified as being subject of abuse and/or future abuse. The County knew or should have known of the need to adequately train its social workers to comply with federal and state mandates related to the protection of such children.

104.  At the time of the underlying events, the County's policies included, but were not limited to:

a.    Not requiring a social worker to provide necessary services and/or implement a mandatory safety and/or case plan – after child abuse allegations have been substantiated against a parent, a danger has been identified, and/or a need for such services has been identified.

b.    Not requiring a social worker to seek judicial intervention and/or promote a case after child abuse allegations have been substantiated against a parent, a danger has been identified, and/or a need for such services has been identified.

c.    Not requiring a social worker to regularly monitor, visit, interview, and/or

1  checkup on a parent, a danger has been identified, and/or and/or child that

2  were the subject of a substantiated child abuse allegations.

3  d.  Of leaving a child, like Y.I. and D.G., in a home in which a parent has

4  multiply substantiated child abuse allegations, and who repeatedly

5  demonstrated a need for services and/or been identified as needing services.

6  105.  At the time of the underlying events, the County's customs and/or practices

7  included, but were not limited to:

8  a.  Not requiring a social worker to provide necessary services and/or

9  implement a mandatory safety plan – after child abuse allegations have been

10  substantiated against a parent, a danger has been identified, and/or and/or a

11  need for such services has been identified.

12  b.  Not requiring a social worker to seek judicial intervention and/or promote a

13  case after child abuse allegations have been substantiated against a parent, a

14  danger has been identified, and/or a need for such services has been

15  identified.

16  c.  Not requiring a social worker to regularly monitor, visit, interview, and/or

17  checkup on a parent and/or child that were the subject of a substantiated

18  child abuse allegations.

19  d.  Of leaving a child, like Y.I. and D.G., in a home in which a parent has

20  multiply substantiated child abuse allegations, and repeatedly demonstrated

21  a need for services and/or been identified as needing services.

22  106.  When McMunn, Prokesch, Winter, and DOES 1 through 30, created the danger to

23  the Plaintiffs, as detailed above, they were acting pursuant to and in accordance

24  with the County's regularly established customs, policies, and practices. The

25  above described actions and/or inactions were further carried out with supervisor

26  authorization and/or approval. The County's Social Worker Supervisors did not

27  discipline, investigate, and/or report their subordinate social workers for failing to

28  act pursuant to and/or in accordance with the County's policies, customs or

1    practices in dealing with Plaintiffs.

2    107.   The County did not investigate or discipline McMunn, Prokesch, Winter, and

3    DOES 1 through 30 for or in relation to their respective conduct, acts, and/or

4    omissions alleged herein. The County regularly fails to discipline and/or

5    investigate its social workers for depriving a child of his or her constitutional

6    rights and/or exposing a child to an identifiable danger.

7    108.   The County refuses to admit that its social workers commit a constitutional

8    violation when they fail to protect a child from forseeable and/or previously

9    identified harm, and failing to ensure that child's reasonable safety. The County

10    denies that McMunn, Prokesch, Winter, and DOES 1 through 30, violated

11    Plaintiff's constitutional rights and/or exposed Plaintiffs to danger. The County

12    ratified and/or approved of McMunn, Prokesch, Winter, and DOES 1 through 30's

13    conduct involving Plaintiffs and Ms. Gonzalez.

14    109.   Defendant COUNTY has a responsibility to train its social workers. The County

15    failed to train its social workers and agents as follows:

16    a.     That the Fourteenth Amendment protects a child's right to be free from

17    danger created by a social worker's conduct or misconduct.

18    b.     That a social worker must provide necessary services and/or implement an

19    adequate safety and/or case plan – after child abuse allegations have been

20    substantiated against a parent, a danger has been identified, and/or and/or a

21    need for such services has been identified.

22    c.     That a social worker must regularly monitor, visit, interview, and/or

23    checkup on a parent and child that were the subject of a substantiated child

24    abuse allegation.

25    110.   The County does not provide training on all policy updates. The County does not

26    expect its social workers to know every policy or procedure.

27    111.   The County's failure to train its agents on these established constitutional rights

28    was a substantial factor in causing Plaintiffs harm. Without adequate training,

1   McMunn, Prokesch, Winter, and DOES 1 through 30, were unfamiliar with and
2   oblivious to their obligations and Plaintiffs' rights.

3   112.   The County knew or should have known the full nature and extent of the above
4   enumerated rights and obligations. But, the County knowingly refrained from (1)
5   revising and/or implementing relevant policies, and (2) training it social workers
6   regarding the identified rights and obligations.

7   113.   These actions, and/or inactions, of the County were the moving force behind the
8   Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs have sustained
9   general and special damages, in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**

**(BREACH OF MANDATORY DUTIES)**

(By All Plaintiffs Against Defendants County, Ms. McMunn, Mr. Prokesch, Ms. Winter, and DOES 1 through 30)

14   114.   Plaintiff incorporates all previous paragraphs of this Complaint as though fully set
15   forth at length herein.

16   115.   Defendants County, McMunn, Prokesch, Winter, and DOES 1 through 30,
17   violated and/or breached mandatory and non-delegable duties. This includes, but
18   is not limited to, those set forth in laws and regulations in the California Welfare
19   & Institutions Code, and CDSS Manual of Policies and Procedures (MPP)
20   established pursuant to Welfare & Institutions Code Section 16501.

21   116.   The specific regulations and laws violated by Defendants, include, but are not
22   limited to the following:

23         a.   CDSS Regulations, Division 31
24         b.   CDSS MPP Regulations 31-125
25         c.   CDSS MPP Regulations 31-200

26   117.   County, McMunn, Prokesch, Winter, and DOES 1 through 30, breached their
27   mandatory duties, as set forth above, from 2015 through 2018, and when
28   Defendants were required to provide identifiable and needed services and/or

safeguards to Ms. Gonzalez. County, McMunn, Prokesch, Winter, and DOES 1 through 30, were obligated to take measures to protect Plaintiffs from any identifiable and/or foreseeable danger or harm. Defendants failed to protect Plaintiffs.

118. If Defendants County, McMunn, Prokesch, Winter, and DOES 1 through 30, had performed their mandatory duties, they would have set up services, adequate safety plans, a case plan, and/or safeguards to protect the Plaintiffs.

119. As a proximate result of Defendants' failure to fulfill their mandatory duties, Plaintiffs suffered physical, emotional and/or psychological abuse, neglect, and mistreatment, and/or severe physical injury.

120. As a direct and proximate result of the Defendants' conduct and/or misconduct, Plaintiffs have suffered, and will continue to suffer, general and special damages according to proof at trial.

121. McMunn, Prokesch, Winter, and DOES 1 through 30's malicious, despicable, and/or wrongful conduct as herein alleged was intentional, done with malice, and/or with a conscious disregard for Plaintiffs' rights, and as a result of this conduct, Plaintiffs are entitled to recover punitive damages according to proof at trial – against the individual defendants only.

## FOURTH CLAIM FOR RELIEF
## ( NEGLIGENCE PURSUANT TO
## CAL. GOV'T CODE §§815.2, 815.6)

(By All Plaintiffs Against Defendants County, Ms. McMunn, Mr. Prokesch, Ms. Winter, and DOES 1 through 30)

122. Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth at length herein.

123. McMunn, Prokesch, Winter, and DOES 1 through 30, were tasked with the responsibility to investigate child abuse allegations against Ms. Gonzalez, and were charged with the specific responsibility to protect children, including the

1    Plaintiffs, from harm and/or neglect.

2    124.  After investigation, McMunn, Prokesch, Winter, and DOES 1 through 30,

3          investigated the child abuse allegations against Ms. Gonzalez, and substantiated

4          the child abuse allegations. McMunn, Prokesch, Winter, and DOES 1 through 30,

5          knew that Ms. Gonzalez abused alcohol and demonstrated a pattern of driving

6          while heavily intoxicated with her children in the car. McMunn, Prokesch, Winter,

7          and DOES 1 through 30, identified a high and/or foreseeable probability that Ms.

8          Gonzalez posed a future risk to the minor Plaintiffs.

9    125.  McMunn, Prokesch, Winter, and DOES 1 through 30 had a special relationship

10         with the Plaintiffs. Once, having apprised themselves of the danger and/or risk to

11         the Plaintiffs, McMunn, Prokesch, Winter, and DOES 1 through 30 had a duty to

12         exercise ordinary care to protect the Plaintiffs from harm.

13   126.  McMunn, Prokesch, Winter, and DOES 1 through 30 failed to set up necessary

14         safeguards, implement a mandatory and/or adequate safety plan, intervene to

15         protect the minor Plaintiffs, and/or seek court intervention.

16   127.  McMunn, Prokesch, Winter, and DOES 1 through 30's acts and/or omissions were

17         a substantial factor in causing Plaintiffs' harm.

18   128.  As a direct and proximate result of McMunn, Prokesch, Winter, and DOES 1

19         through 30's conduct and/or misconduct, Plaintiffs have suffered, general and

20         special damages according to proof at trial.

21   129.  California Government Code, §820 provides that an employee of a public entity is

22         liable for his or her acts or omissions to the same extent as a private person, and

23         under California Government Code, §815.2 the public entity that employs the

24         individual is vicariously liable for the torts of its employees committed in the

25         scope of employment. At all relevant times, McMunn, Prokesch, Winter, and

26         DOES 1 through 30 were acting with the scope of their duties and/or employment

27         with the County.

28   / / /

1

## FIFTH CLAIM FOR RELIEF

2

## (NEGLIGENCE)

3

(By All Plaintiffs Against Defendant Gonzalez)

4    130.   Plaintiff incorporates all previous paragraphs of this Complaint as though fully set

5           forth at length herein.

6    131.   Ms. Gonzalez owed a duty to care for the minor Plaintiffs, and to ensure their

7           safety.

8    132.   Ms. Gonzalez breached this duty when she drove a vehicle while extremely drunk,

9           and with the Plaintiffs in the vehicle.

10   133.   Driving while intoxicated – especially with children in the car – is a violation of

11          California Penal and Vehicle codes.

12   134.   Ms. Gonzalez's drunk driving and crash was a substantial factor in causing

13          Plaintiffs serious physical harm. As a direct and proximate result, Plaintiffs have

14          suffered, general and special damages according to proof at trial.

15

## FIFTH CLAIM FOR RELIEF

16

## (BATTERY)

17

(By All Plaintiffs Against Defendant Gonzalez)

18   135.   Plaintiff incorporates all previous paragraphs of this Complaint as though fully set

19          forth at length herein.

20   136.   Ms. Gonzalez willfully caused Plaintiffs to suffer extremely harmful and offensive

21          conduct to their person. Plaintiffs did not consent to this conduct.

22   137.   As a direct and proximate result of Ms. Gonzalez's willful and unlawful

23          misconduct, Plaintiffs have suffered, and will continue to suffer, general and

24          special damages according to proof at trial.

25   138.   Ms. Gonzalez's unlawful conduct was a substantial factor in causing Plaintiffs

26          harm.

27   / / /

28   / / /

**Jury Trial Demand**

139.   Plaintiff demands a jury trial on each Claim for Relief set forth above.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for judgment against Defendants, as to all causes of action, as follows:

1.     General damages and special damages according to proof at trial;

2.     As against the individual defendants, punitive damages as allowed by law;

3.     Injunctive relief, both preliminary and permanent, as allowed by law, (including preliminary injunctive relief to be based upon a separate application);

4.     Attorneys' fees, if any, as allowed by law;

5.     Costs of suit incurred herein; and

6.     Pre-judgment interest against all Defendants; and

7.     Such further relief as the Court deems just and proper.

Dated: March 27, 2020          The Law Offices of Shawn A. McMillan, APC

/S/ Shawn A. McMillan
Shawn A. McMillan, Esq.
Stephen D. Daner, Esq.
Adrian M. Paris, Esq.
WIC §317(e) Counsel for Y.I., D.G., and A.G.

COMPLAINT FOR DAMAGES

23