1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Y.I., a minor, by and through her
guardian ad litem, et al.

                          Plaintiffs,

v.

COUNTY OF SAN DIEGO, et al.

                          Defendants.

Case No: 3:20-cv-00588-LAB-DEB

**ORDER GRANTING MOTIONS
TO DISMISS [DKT. 19, 20]**

Plaintiffs Y.I., A.G., and D.G. (collectively, "Plaintiffs") are the three minor children of Defendant Mayra Gonzalez, who has a history of alcohol abuse and drunk driving. In 2015 and 2016, following drunk driving arrests with Plaintiff Y.I. present in the car, Defendant Gonzalez was investigated for complaints of child abuse. Social workers reported findings of "severe neglect" in both instances. On November 12, 2018, Plaintiffs were injured in a serious car accident involving a drunk Gonzalez, who drove into oncoming traffic, slamming headfirst into another car, injuring all three children.

Plaintiffs filed this suit against Defendants County of San Diego (the "County"); Sharon McMunn, Bob Prokesch, and Michele Winter (collectively, "Defendant Social Workers"); and their mother, Mayra Gonzalez. They bring seven causes of action against Defendants, alleging violations of 42 U.S.C. § 1983;

breach of mandatory duties under the California Welfare & Institutions Code and CDSS Manual of Policies and Procedures; negligence; and battery. Defendant Social Workers and the County each filed a motion to dismiss the claims made against them. (Dkt. 19, 20.)

Having considered the arguments in support of and in opposition to Defendants' respective motions, the Court **GRANTS** the motions to dismiss and **DECLINES** to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, which are **DISMISSED WITHOUT PREJUDICE**.

## I.    BACKGROUND

### A. Defendant Gonzalez's History of Alcohol Abuse

Defendant Mayra Gonzalez, the natural mother of Plaintiffs Y.I., A.G., and D.G., has a documented history of alcohol abuse and drunk driving. (Dkt. 15, Second Amended Complaint ("SAC") ¶¶ 17–18.) This history dates back to November 2009, when family and friends stopped an inebriated Gonzalez from driving her car, ultimately resulting in Gonzalez's arrest and a public intoxication charge. (*Id.*)

Then, on March 25, 2015, a very drunk Gonzalez got behind the wheel again, this time with Plaintiff Y.I. and another child in the car. (*Id.* ¶ 19.)  At approximately 10:00 a.m., Gonzalez lost consciousness while driving drunk, veered into another lane and crashed, causing the car's air bags to deploy. (*Id.* ¶ 20.) She refused medical attention at the scene and drove away. She then checked herself in to the Tri-City Medical Center, which measured her Blood Alcohol Concentration ("BAC") level at 0.259%. (*Id.* ¶¶ 21–23.) The County received a Child Abuse Referral designated for "immediate" investigation following this incident. (*Id.* ¶ 24.)  Tri-City Medical Center staff informed Defendant Sharon McMunn, who was assigned to investigate, of the circumstances of Gonzalez's crash and her extreme level of intoxication. Gonzalez lied to McMunn claiming she was not drunk and gave a false account of other details of the crash and its aftermath. (*Id.* ¶ 25–27.) McMunn and

1  Defendant Bob Prokesch found "severe neglect," determining that Gonzalez
2  willfully endangered Y.I. and posed a serious risk of future harm to her. (*Id.* ¶¶ 28–
3  30.) They provided their findings to the California Department of Justice ("DOJ")
4  which, in turn, placed Gonzalez on the Child Abuse Central Index ("CACI"). (*Id.*
5  ¶ 31.) McMunn and Prokesch followed up on creating a "voluntary safety plan"
6  relating to Gonzalez's parenting and supervision of Y.I., which included educating
7  her about the safety and risk factors associated with consuming alcohol and driving
8  under the influence. (*Id.* ¶¶ 39–40, 47.)

9      In May 2016, Defendant Gonzalez, now pregnant with Plaintiff D.G., once
10  again drove drunk with Plaintiff Y.I. in the car. (*Id.* ¶ 50.) This time, she was
11  speeding and driving erratically, and she ultimately crashed into a vehicle stopped
12  at a red light. Law enforcement officials determined her BAC was 0.23% and that
13  she had been driving without a valid driver's license. (*Id.* ¶¶ 55–56.) They arrested
14  Gonzalez and charged her with willful child endangerment, driving under the
15  influence with a child in the car, and hit-run driving among other charges. (*Id.* ¶ 57.)
16  The County received another Child Abuse Referral, and McMunn once again
17  investigated the child abuse allegations. (*Id.* ¶¶ 59–60.) McMunn and Defendant
18  Michelle Winter asked the hospital to "flag" D.G. at birth, and prompted a state
19  court judge to require Gonzalez to wear an alcohol ankle monitor until D.G.'s birth.
20  (*Id.* ¶¶ 66–67.) McMunn and Winter again reported findings of "severe neglect,"
21  determining that Gonzalez posed a "high risk" of harm to Y.I. A written report of
22  their findings was submitted to the California DOJ, who again placed Gonzalez on
23  the CACI. (*Id.* ¶ 74.) McMunn and Winter also created a voluntary safety plan and
24  offered to provide Gonzalez with counseling resources. (*Id.* ¶ 86–87.)

25      On August 17, 2017, Gonzalez pled guilty to willful child endangerment and
26  driving under the influence. (*Id.* ¶¶ 97–98.) The court sentenced her to five years'
27  probation and ordered her not to drive without a valid license or insurance. (*Id.*
28  ¶¶ 98–99.)

## B. The November 2018 Car Crash

Despite these interventions, on November 11, 2018, Gonzalez drove drunk with her children in the car for at least the third time.  On that day, Gonzalez left a birthday party at Chuck E. Cheese where she had already consumed alcohol and drove to the beach with all three of her children in the car. (*Id.* ¶ 103.) Once there, Gonzalez continued drinking. (*Id.* ¶ 104.) She then drove to a house party, where she drank at least eleven more alcoholic drinks. (*Id.* ¶ 105.) Extremely intoxicated, Gonzalez left the party with the children. She hit a parked car, then crashed into a sign post and a wall, then ran multiple red lights, drove the wrong way into oncoming traffic, and ultimately slammed headfirst into another car. (*Id.* ¶¶ 106-14.) The impact caused A.G. to fly into the car's windshield and suffer serious physical injuries, including brain injuries that resulted in seizures for multiple weeks afterward. (*Id.* ¶¶ 115.) Y.I. and D.G. also suffered physical injuries including broken bones, swelling, and abrasions. (*Id.* ¶ 116–17.)

On November 19, 2018, Gonzalez was criminally charged with three counts of felony child abuse; driving under influence and causing injury with a prior DUI; and driving without a license with a prior DUI. (*Id.* ¶ 122.) The state court sentenced her to 14 years in prison. (*Id.* ¶ 125.)

Through their guardian ad litem, Plaintiffs allege that the County and the Defendant Social Workers failed to properly investigate the complaints of child abuse and failed to adequately protect the minor Plaintiffs from Gonzalez. The County and Defendant Social Workers move to dismiss those claims, arguing that the SAC doesn't allege facts sufficient to establish any federal or state law violation.

## II.   LEGAL STANDARD

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

3:20-cv-00588-LAB-DEB

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The Court need not accept legal conclusions couched as factual allegations. *See Twombly*, 550 U.S. at 555.

## III.   DISCUSSION

### A. Violations of 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001); *see* 42 U.S.C. § 1983 (providing a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ."). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)). "In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citations omitted) (emphasis in original).

Plaintiffs bring three claims under 42 U.S.C. § 1983 – two against Defendant Social Workers and one against the County. Plaintiffs allege that the Social

Workers violated § 1983 by depriving them of their constitutional rights guaranteed by the Due Process Clause of the Fourteenth Amendment, and by violating their rights under Titles IV-A, B, and E of the Social Security Act ("SSA") and under the Child Abuse Prevention and Treatment Act ("CAPTA"). Plaintiffs also allege that the County is liable under *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978) because its policies, practices, and customs were the driving force behind the violations of their rights.

### i. Due Process Claim Against Social Worker Defendants

This Court, *sua sponte,* previously dismissed Plaintiffs' original Complaint, finding that their Due Process claim was foreclosed by the holding of *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189 (1989). (*See* Dkt. 7.) Plaintiffs then filed an Amended Complaint (Dkt. 8), and now the SAC, with the same flawed allegations that fail to address the deficiencies identified in the Court's previous Order. In their Opposition to the motion to dismiss, Plaintiffs repeat their deficient arguments under the guise that this lawsuit is not based on a failure to act, but rather on Defendant Social Workers' affirmative actions and alleged abandonment of the minor Plaintiffs. But reframing the same inadequate facts under a different legal theory doesn't help Plaintiffs overcome *DeShaney*.

In *DeShaney*, the Supreme Court held that a child's Due Process rights weren't infringed by a county and its employees who failed to prevent the severe abuse of a child by his natural father, even if they knew from various prior complaints and investigations that the child was at risk. The defendant social workers had investigated the complaints of child of abuse, recommended several protection measures, made monthly visits to the minor's home, and, at one point, even removed the minor from the custody of his father only to later return him to his home. *DeShaney*, 489 U.S. at 192–93. The defendants took no further action to protect the child, and his father ultimately beat him so severely that he suffered permanent brain damage. *Id.* at 193.

The *DeShaney* Court confirmed that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* at 195, 200 ("The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."). And while state law might impose on the county and its officials a duty to protect the child, the Constitution imposes no such duty. *Id.* at 201. A failure to carry out a duty created by state law doesn't violate substantive Due Process. *Id*.

Plaintiffs here allege that they were harmed by the actions of a private actor – Defendant Gonzalez. Their claims must therefore fall within an exception to the general rule that the Constitution doesn't require state actors to protect persons from the violent acts of private parties. *Id*. at 197. Under the "special relationship" exception, a state actor may be liable for the act of a third party in situations where the state actor has established a relationship with the plaintiff through, for example, incarceration or involuntary hospitalization. *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992) (citations omitted). Under the "danger creation" exception, state actors may be liable where they created the danger resulting in injury to the plaintiff. *Id*. A claim based on the danger-creation theory "necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger." *Id.* (citations omitted).

Plaintiffs argue that *DeShaney* was about a failure to act but that this case is about affirmative acts. Specifically, Plaintiffs argue that "[h]ere, unlike in *DeShaney*, the [Social Worker] Defendants acted and intervened to first identify a serious danger to the children, and then to develop a plan to protect them—which Defendants later decided to abandon." (Dkt. 25 at 1.) But this is a mischaracterization of the facts alleged in the SAC, which point only to a suggestion that Defendants didn't do enough to follow up on the child abuse complaints and protect the children from harm.

Here, the County had received complaints that Plaintiff Y.I. might be a victim of child abuse. The Social Workers investigated the complaints, reported their findings, and provided voluntary services to Defendant Gonzalez, but ultimately left Y.I. in the custody of her mother. But Defendants couldn't have established a "special relationship" with Plaintiffs where they never removed any of them from their mother's custody, launched any formal protection plan, or sought court intervention. Defendants' awareness of Gonzalez's child abuse and their prior offers to provide voluntary services to Gonzalez aren't enough to create a special relationship.

Nor does the SAC allege any facts suggesting that the Social Workers actively placed the children in danger. Nearly two years had passed after the Social Workers last investigated Defendant Gonzalez and before her November 2018 car accident. Up until that accident, the SAC alleges that Plaintiffs had been in the private care of Gonzalez, not that of the County.  Neither the County nor the Social Workers took any affirmative actions with respect to Plaintiffs or played any active role in their protection during that period. Plaintiffs repeatedly argue that Defendants "abandoned" their safety and case planning, yet simultaneously acknowledge that there was never a formal safety plan in place—only that voluntary services were offered. (*See* SAC ¶ 84 ("[Defendant Social Workers] worked on and/or created a voluntary safety plan designed to protect Y.I. and D.G. Prior to completing the necessary safety and/or case plan, [Defendants] decided and/or agreed to abandon and/or terminate the case planning process."); *id*. ¶ 90 ("Instead of taking the legally required steps to protect the Plaintiffs, [Defendant Social Workers] merely 'educated' Ms. Gonzalez (for a second time) about safety and risk factors involving Y.I. when consuming excessive alcohol and/or driving under the influence.").) This points to the same conclusion the Court reached in *DeShaney*: "a State's failure to protect an individual against private violence simply not does constitute a violation of the Due Process Clause." *DeShaney*, 489 U.S.

1    at 197.

2        Even if state law imposed a duty on the Social Workers to act, failure to carry

3    out a duty imposed by the state doesn't amount to a federal substantive Due

4    Process violation. (Dkt. 7 (citing *DeShaney*, 489 U.S. at 201).) Plaintiffs renewed

5    allegations fail to state a Due Process violation against the Social Workers under

6    42 U.S.C. §1983, and because they have not or cannot cure the same deficiencies

7    identified in the Court's prior order, the First Claim for Relief is **DISMISSED WITH**

8    **PREJUDICE**.

9                            ## ii.  Federal Statutory Rights

10       Defendant Social Workers next argue that the federal statutes Plaintiffs rely

11   on for their second claim—Titles IV-A, B, and E of the SSA and CAPTA—don't

12   create a right enforceable under Section 1983. (Dkt. 19-1 at 9.)

13       Section 1983 "is not itself a source of substantive rights, but merely provides

14   a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510

15   U.S. 266, 271 (1994) (citations and internal quotation marks omitted). To establish

16   a claim under Section 1983 for violation of a federal statutory right, a court must

17   consider three factors: "(1) Congress must have intended that the provision in

18   question benefit the plaintiff; (2) the plaintiff must demonstrate that the right

19   assertedly protected by the statute is not so vague and amorphous that its

20   enforcement would strain judicial competence; and (3) the statute must

21   unambiguously impose a binding obligation on the States." *Sanchez v. Johnson,*

22   416 F.3d 1051, 1056–57 (9th Cir. 2005) (quoting *Blessing v. Freestone,* 520 U.S.

23   329, 34–41(1997)) (internal quotation marks omitted). Thus, "a plaintiff seeking

24   redress under § 1983 must assert the violation of an individually enforceable right

25   conferred specifically upon him, not merely a violation of federal law or the denial

26   of a benefit or interest, no matter how unambiguously conferred." *Sanchez,* 416

27   F.3d at 1062.

28       The SAC alleges that the County is "required to comply with federal

mandates attached to th[e] funds" it receives from the federal government to provide services to children in the child welfare system. (SAC ¶ 140.) Further, "under these laws and regulations, once it was determined that services were necessary, the County and the Social Worker Defendants were required to complete an assessment, develop and/or implement a formal safety and/or case plan, and/or a program of supervision, and or document the plan." (*Id.* ¶ 141.)

However, while the SAC makes cursory mention of federal statutory violations, Plaintiffs nowhere identify the federal right of which they have allegedly been deprived. Instead, they merely refer generally the SSA and CAPTA without invoking any specific provisions of these statutes and without making any argument establishing which interests they might have been deprived of in the first place. *See Guatay Christian Fellowship v. Cnty. of San Diego,* 670 F.3d 957, 986 (9th Cir. 2011) (affirming denial of the plaintiff's Section 1983 claim where plaintiff failed to lay the necessary foundation regarding which of the defendant's "actions constituted a deprivation for procedural due process purposes, nor an argument establishing which interests it might have been deprived of in the first place.").

Plaintiffs attempt to overcome these deficiencies in their Opposition by identifying certain rights allegedly created under the SSA and CAPTA. (Dkt. 25 at 14–15.) But on a motion to dismiss under Rule 12(b)(6), this Court must limit its inquiry to the four corners of the complaint and the documents it incorporates. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). The absence of any allegations in the SAC identifying which of Plaintiffs' rights were violated and whether Congress intended any of those rights to benefit them is fatal to their claim under Section 1983. The Court **GRANTS** Defendant Social Workers' motion to dismiss Plaintiffs' Second Claim for Relief. Because this is the first time this claim has been dismissed and it is conceivable that it may be cured by further amendment, this claim is **DISMISSED WITHOUT PREJUDICE**.

//

### iii. *Monell* Liability

Plaintiff's third claim under Section 1983 is alleged against the County for violation of Plaintiffs' due process rights. This claim fails because, as previously explained, Plaintiffs fail to state any violation of their Constitutional rights. *See Palmerin v. City of Riverside*, 794 F.2d 1409, 1414-15 (9th Cir. 1986) ("absent any constitutional violations by the individual defendants, there can be no *Monell* liability"). Plaintiffs have also insufficiently alleged that they suffered injuries pursuant to any governmental policy or custom. A municipality can only be held liable for injuries inflicted by its employees or officers if it somehow participated in the wrongdoing through its official rules, policy, custom, or practice. *See Monell*, 436 U.S. at 690–91. To establish *Monell* liability, a plaintiff must prove that: (1) the plaintiff "possessed a constitutional right of which he was deprived;" (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the "moving force" behind or cause of the constitutional violation. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008) (citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996)).

There are three ways to show the existence of a custom or policy: (1) by showing a longstanding practice or custom which constitutes the municipality's standard operating procedure; (2) by showing that an official with final policymaking authority made the decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate. *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008). Mere negligence doesn't support a *Monell* claim. *Doughterty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *City of Cantonth v. Harris*, 489 U.S. 378, 390 (1989)).

Additionally, failure to train serves as a basis for Section 1983 liability only where it reflects a "deliberate or conscious choice" by a municipality that amounts

to its policy. *City of Canton v. Harris,* 489 U.S. 378, 389 (1989) (internal citations and quotations omitted). As the Ninth Circuit has noted:

> [D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Satisfying this standard requires proof that the municipality had actual or constructive notice that a particular omission in their training program will cause[] [municipal] employees to violate citizens' constitutional rights. In turn, to demonstrate that the municipality was on notice of a constitutionally significant gap in its training, it is ordinarily necessary for a plaintiff to demonstrate a pattern of similar constitutional violations by untrained employees.

*Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 794 (9th Cir. 2016) (internal citations and quotation marks omitted) (alterations in original). This situation is "rare"—"'the unconstitutional consequences of failing to train' must be 'patently obvious' and the violation of a protected right must be a 'highly predictable consequence' of the decision not to train." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 63 (2011)).

Here, the factual allegations regarding how the Social Workers chose to handle Plaintiffs' case do not, without more, support a *Monell* claim against the County. Plaintiffs list several of what they allege are the County's "policies, customs, and/or practices," such as "[n]ot requiring a social worker to seek judicial intervention and/or promote a case after child abuse allegations have been substantiated against a parent" or "leaving a child, like Y.I. and D.G., in a home in which a parent has multipl[e] substantiated child abuse allegations," but these allegations relate to three county officials and their actions in a single isolated case, not to a widespread custom or policy or a county-wide failure to train. (Dkt. 26 at 8–9.) Conclusory allegations that the County has widespread unconstitutional customs, policies, and practices or failed to properly train individuals, and that the unconstitutional actions of the individual Social Workers in this case were ratified by policy-making officials, without further factual allegations to support these

general assertions, are insufficient to state a *Monell* claim. *See Hyun Ju Park v. City & County of Honolulu*, 952 F.3d 1136, 1142-43 (9th Cir. 2020); *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

Plaintiffs general allegations that the County made a deliberate or conscious choice not to adequately train its social workers and that this failure in a single case amounts to County policy, custom, or practice is inadequate to state a *Monell* liability claim. Plaintiffs' Third Claim for Relief is **DISMISSED WITH PREJUDICE** as to the County.

### B. State Law Claims

The Court's jurisdiction in this case is predicated on the existence of claims arising under federal law, namely 42 U.S.C. § 1983. In federal question cases, a district court "'may decline to exercise supplemental jurisdiction' over state law claims if it 'has dismissed all claims over which it has original jurisdiction.'" *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting 28 U.S.C. § 1367(c)(3)). Because the Court has dismissed Plaintiffs' sole federal claims it has discretion to decline to exercise supplemental jurisdiction over any remaining state law claims. 28 U.S.C. § 1367(c); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). The Court exercises that discretion here and **DISMISSES WITHOUT PREJUDICE** all remaining claims in this case.

### IV.   CONCLUSION

The Court **DISMISSES WITH PREJUDICE** the SAC's First and Third Claims for Relief; **DISMISSES WITHOUT PREJUDICE** the SAC's Second Claim for Relief; and **DECLINES** to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims under the Fourth, Fifth, Sixth, and Seventh Claims for Relief, which are **DISMISSED WITHOUT PREJUDICE**.

If Plaintiffs choose to file an amended complaint, they must do so on or before **October 18, 2021.**

**IT IS SO ORDERED**.

Dated:  September 27, 2021

Honorable Larry Alan Burns
United States District Judge

3:20-cv-00588-LAB-DEB